UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROB L. MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>JOHANNA SMITH, ISCI Warden;<br>IDAHO DEPARTMENT OF<br>CORRECTIONS; DR. LOIS ADRIAN;<br>PHILIP VALDEZ, ICC Warden; DR.<br>GERRETT<br><br>Defendants. | Case No. 1:10-cv-00039-LMB<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Now pending before the Court are Defendant Johanna Smith's *Motion to Dismiss*.

(Dkt. 73).  On June 16, 2010, the court entered an Initial Review Order allowing Plaintiff

to proceed with his claims against Defendants Johanna Smith, Lois Adrian, Philip Valdez

and Dr. Gerrett. (Dkt. 8).  On August 24, 2011, the Court dismissed Valdez from the

action.  (Dkt. 45).  Having reviewed the record, and Smith's motion, the Court issues the

following Order dismissing Plaintiff's Amended Complaint in its entirety.

### Background

Mitchell is an inmate in the custody of the Idaho Department of Correction

(IDOC), alleging that he has suffered from a hernia since approximately 2004.  Mitchell

claims that his symptoms have increased in recent years, but prison officials refuse to authorize surgery.  Mitchell contends that in refusing to authorize hernia surgery, Warden Smith was deliberately indifferent to his medical needs.

In her motions, Smith argues that Mitchell's complaint should be dismissed for several reasons.  Smith first argues Mitchell did not property exhaust his administrative remedies.  Alternatively, she asserts that Mitchell's medical records do not support his claims that Defendants were deliberately indifferent to his serious medical needs.  Finally, Smith alleges that she is entitled to qualified immunity.

In support of her motion, Smith argues that the ICC medical records reflect that once Mitchell began complaining about symptoms related to his hernia, ICC medical staff was attentive and diligent in treating his medical condition.  Further, it is undisputed that the only reason Mitchell was not given a surgical consultation while at ICC, was because he was transferred out of the facility.  Finally, Smith submits that there are no genuine issues of material fact.

## Discussion

### A.    Exhaustion of Administrative Remedies

Smith argues that Mitchell failed to exhaust his administrative remedies prior to filing this lawsuit.  Specifically, she claims that Mitchell only submitted a Concern Form in October 2009.  However, Smith alleges that Mitchell failed to complete the

administrative process beyond that point.  Likewise, Smith submits that dismissal is required because Plaintiff failed to exhaust his administrative remedies.

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The *Jones v. Bock* Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint.  *Woodford v. Ngo*, 548 U.S. at 103.  In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system.  *Id*. at 86-87.  The Supreme Court rejected the Ninth

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**MEMORANDUM DECISION AND ORDER -3-**

Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2002). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

**B.      Grievance Process of the Idaho Department of Correction (IDOC)**

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most capable of responding" to the inmate's issue. (*Affidavit of Jill Whittington*, Dkt. 73-2, at ¶ 5) ("*Whittington Affidavit*"). If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. (*Id.* at ¶ 6). The Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. (*Id.*)

When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. (*Id.*) Only one issue may be raised in each grievance. (*Id.* at ¶ 7). When the grievance involves a medical issue, the Grievance Form is "routed through medical staff supervised by a

Health Services Administrator, who is employed by the health care contractor." (*Id.* at

¶ 8).  The Health Services Administrator is charged with responding to the grievance.

(*Id.*)  If the grievance involves a non-medical issue, the reviewing authority is generally

the warden of the prison.  (*Id.* at ¶ 7).

If the decision on an inmate's grievance is not satisfactory to the inmate, the

inmate may appeal that decision. (*Id.* at ¶ 12). Not until the completion of all three of

these steps - Concern Form, Grievance Form, and grievance appeal - is the grievance

process exhausted.  (*Id.* at ¶ 14).

Since November 2007, all grievances are logged and recorded, even those that are

not processed.  (*Id.* at ¶ 18).  Grievances are logged into a computer database, which is

searchable by an inmate's name or IDOC number, or by year.  (*Id.*)  According to Affiant

Jill Whittington, Grievance Coordinator for ISCI, there is no record of any grievance

submitted by Plaintiff from 2007 to January 23, 2012.  (*Id.* at ¶ 19).

**C.      Plaintiff did not exhaust his administrative remedies.**

Along with his Complaint, Mitchell submitted a completed copy of an Offender

Concern Form.  The Concern Form is clearly related to this claim.  (*Exhibit 1 to

Complaint*, Dkt. 3-1).  Additionally, Plaintiff has submitted the response to his Concern

Form, informing Mitchell that he was "in March 2009, [he was] sent off site for an

evaluation by a surgeon, Dr. Martin..." (*Id.*)

However, Plaintiff has not submitted copies of any Grievance Forms or documents showing that he appealed any grievance decision.  In fact, Plaintiff has submitted nothing in response to Defendants' Motion to Dismiss.  Therefore, there is no evidence that Plaintiff filed any grievance or grievance appeal.  Plaintiff's only allegation regarding the grievance process is his statement in his Complaint that he exhausted his administrative remedies.  (*Complaint*, Dkt. 3 at 8).  This general allegation is insufficient to overcome Defendants' evidence that Plaintiff did not file a grievance.  The Court finds that Plaintiff did not file a grievance, processed or otherwise, on the issue of his requested hernia surgery.

Defendants have met their burden of showing that Plaintiff did not exhaust his administrative remedies.  Although Plaintiff may have undertaken the first step of the grievance process - submitting an Offender Concern Form - he did not proceed past the first step.  He did not file a grievance.  Therefore, Plaintiff did not exhaust his administrative remedies.  Accordingly, the Court will dismiss the Complaint without prejudice.

## D.    No Evidence of Deliberate Indifference

Beyond the failure to properly exhaust administrative remedies, Plaintiff's claims do not rise to the level of deliberate indifference, which is a required showing to maintain an Eighth Amendment medical claim.

Here, Plaintiff alleges that Defendants violated his Eighth Amendment right to adequate medical care.  To state a proper Eighth Amendment claim regarding prison medical care, a plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal quotations omitted), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards

in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, [Plaintiff] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk'" to Plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there is no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to

demand specific care.  She is not entitled to the best care possible.  She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").  A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances."  *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

There is no constitutional right to an outside medical provider of one's own choice. *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").  Therefore, Plaintiff cannot state a claim by demanding to be seen by an outside medical provider.

In order to succeed on his claims, Mitchell must demonstrate either that Smith personally participated in the decisions regarding Plaintiff's medical care, or that, as a supervisor, he or she directed, or knew of and failed to prevent, the actions causing Plaintiff's damages or injuries.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Vague and conclusory allegations of official participation in civil rights violations are not sufficient.  *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'") (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Here, there is no dispute regarding the facts of Mitchell's claims.  In fact, Plaintiff has not even responded to Defendants' dispositive motions.  Further, the Court was unable to identify any meaningful dispute regarding Mitchell's factual allegations. Rather, the Court finds that the facts fail to give rise to a valid or actionable claim of deliberate indifference.  (*See Memorandum Decision and Order*, Dkt. 45)

In summary, Mitchell was diagnosed with a right inguinal hernia on November 10, 2004.  (*Id*.)  On January 24, 2007, the hernia was examined again by ICC medical staff, and a hernia belt was ordered for treatment. (*Id*.) Not until December 6, 2007, did Mitchell present himself for treatment of hernia pain to ICC medical staff. (*Id*.) In early January 2008, there was a flurry of activity from Mitchell who sent several requests to be examined by medical staff. (*Id*.)  On June 3, 2008, Dr. Hrnicek stated that he believed Mitchell to be an "ideal candidate for surgical repair." (*Id*.) However, before Mitchell could be sent for a surgical consultation, he was transferred out of ICC on June 18, 2008. (*Id*.)

ISCI medical staff continued treating Mitchell for his hernia through the rest of 2008.  (*Id*.)  Then, at Mitchell's request, on January 26, 2009, he was seen by ISCI medical staff and a consultation request was made for hernia surgery.  (*Id*.; *see also*

*Thacker Affidavit*, Dkt. 30-3).  After re-evaluating Mitchell, and rescheduling the surgery consultation, on March 18, 2009, Mitchell was sent to St. Luke's Hospital for a surgery consultation, resulting in a recommendation of surgery from Dr. Martin.  (*Id.*) However, the request for surgery was denied by an IDOC official, noting that it doesn't appear "medically necessary." (*Id.*)

After managing the hernia and caring for Mitchell for another nine months, on February 2, 2010, ISCI medical staff made another request for a surgical consultation, which occured on April 6, 2010.  (*Id.*)  On Dr. Henson's recommendation, on April 27, 2010, ISCI requested surgery for Mitchell's hernia. (*Id.*)  Thereafter, following standard follow-up procedures, on June 7, 2010, Mitchell underwent surgery for repair of his hernia.  (*Id.*)  However, Mitchell had complications following his surgery, and on July 15, 2010, ISCI medical staff requested another surgery consultation.  (*Id.*)

Once aware of Mitchell's medical needs, ICC medical staff undertook reasonable efforts to care for his medical needs, including a hernia belt, a bottom bunk memo, and pain medication.  (*Id.*) Mitchell's allegations of improper delay is properly characterized as conservative medical care; deliberate and wilful indifference does not exist. (*Id.*) Accordingly, dismissal is equally appropriate for Plaintiff's failure to plead deliberate indifference sufficiently.

## Order

1.  Defendant Smith's *Motion to Dismiss* (Dkt. 73) is GRANTED;

2.      Defendant Smith's *Motion for Summary Judgment* (Dkt. 72) is DENIED

AS MOOT;

3.      Defendant Smith's *Motion to Compel* (Dkt. 67) is DENIED AS MOOT;

4.      Plaintiff Mitchell's *Complaint* (Dkt. 3) is DISMISSED WITHOUT

PREJUDICE; and

5.      This action is CLOSED.

DATED:  **January 16, 2013**.

Honorable Larry M. Boyle
United States Magistrate Judge